IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**COREAN MICHELLE WORTHY**                                                              **PLAINTIFF**

v.                                         No. 5:13–CV–112-JLH–BD

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                      **DEFENDANT**

## REPORT AND RECOMMENDED DISPOSITION

### Instructions for Recommended Disposition

The following recommended disposition was prepared for U.S. District Judge J. Leon Holmes. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Holmes may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Recommended Disposition

Corean Michelle Worthy seeks judicial review of the denial of her second application for supplemental security income.[3] Ms. Worthy received SSI as a child. The record does not specify the basis for those benefits. When her childhood SSI ceased, she applied for adult SSI. That application was denied.[4] Less than a year later, she applied again. At that time, Ms. Worthy was 20 years old and the mother of a one-year-old child. She based disability on a learning disorder, asthma, and bronchitis.[5]

**The Commissioner's second decision**. After considering the second application, the Commissioner's ALJ determined Ms. Worthy has severe impairments — borderline intellectual functioning and major depressive disorder[6] — but that she could do unskilled work at all exertional levels.[7] Because a vocational expert identified available work,[8] the ALJ determined Ms. Worthy was not disabled and denied the application.[9]

---

[3] SSA record at p. 113.

[4] *Id*. at p. 133.

[5] *Id*. at p. 126.

[6] *Id*. at p. 14.

[7] *Id*. at p. 20 (limiting work to work involving short, simple tasks and instructions; occasional contact with the public; and occasional interaction with co-workers, and supervisors).

[8] *Id*. at pp. 41-42.

[9] *Id*. at p. 25.

After the Commissioner's Appeals Council denied a request for review,[10] the second decision became a final decision for judicial review.[11] Ms. Worthy filed this case to challenge the decision.[12] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13] This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Ms. Worthy's allegations**. Ms. Worthy believes that she is entitled to disability benefits under listing 12.05C.[14] That listing is one of the ways of proving disability due to mental retardation. Meeting listing 12.05C requires a "valid verbal, performance, or

---

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]Docket entry # 11.

full scale IQ of 60 through 70…."[15] The requirement refers to the Wechsler Intelligence Scales in which "Verbal and Performance IQ scores are added together and are then converted to an overall Full Scale IQ score."[16]

Ms. Worthy's IQ was tested as part of a consultative mental evaluation.[17] Ms. Worthy's full scale score — 69 — fell within the required range.[18]  For that score to count in proving disability, however, the score must be valid.  The ALJ rejected the score as invalid, observing that the examiner reported no deficits in adaptive living.  According to the examiner, Ms. Worthy did not function like a mentally retarded person.[19]  The court must determine whether substantial evidence supports the determination that the score was invalid.[20]

For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to support the determination.[21]  A reasonable mind would accept the evidence

---

[15]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (2011).

[16]William Arthur Atkins, 2 The Gale Encyclopedia of Mental Health 1648 (3d ed.).

[17]SSA record at p. 201.

[18]*Id*. at p. 204.

[19]*Id*.

[20]*Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998) ("[T]he question is whether the decision to disregard [IQ] scores as unreliable is supported by substantial evidence on the record as a whole.").

[21]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

as adequate because the evidence shows no deficits in adaptive functioning. The regulations provide the following examples of adaptive functioning: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."[22] Ms. Worthy took care of herself and her child, fed her child, washed her child's clothes, and shopped for the child's clothing and diapers.[23] She could handle a checking account and pay bills.[24]

During the pendency of her application, Ms. Worthy had a second child. She felt overwhelmed and stressed from rearing her small children; she complained that she received no help, had no time to herself, and could not socialize with her friends.[25] Even without help, however, she socialized with others.[26] She chose to rely on her

---

[22] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C(1) (2011). Adaptive skills include: "the ability to produce and understand language (communication); practical skills needed for activities of daily living (ADLs); use of community resources; health, safety, leisure, self-care, and social skills; self-direction; functional academic skills (reading, writing, and arithmetic); and job-related skills." Paula Anne Ford-Martin, Emily Jane Willingham & Rebecca J. Frey, 1 The Gale Encyclopedia of Mental Health 819 (3d ed.).

[23] SSA record at pp. 145 & 204.

[24] Id. at pp. 148 & 204.

[25] Id. at pp. 266-67, 270 & 281.

[26] Id. at p. 202 (she goes out with friends "riding" and visits her boyfriend) & p. 276 (she fought with girls at a club and cut a girl with a box cutter).

application for SSI rather than pursue child support.[27]  This evidence reflects difficulty managing circumstances, but not deficits in adaptive learning.  The psychological examiner diagnosed borderline intellectual functioning, rather than mental retardation, because of the lack of deficits in adaptive functioning.[28]  The examiner reported a lack of motivation and suspected exaggeration of symptoms.[29]  This evidence is sufficient to support the determination that the full-scale score was invalid.

Even if the score was valid, proving mental retardation requires "evidence demonstrat[ing] or support[ing] onset of the impairment before age 22."[30]  Ms. Worthy turned age 22 shortly before the unfavorable decision.  Ms. Worthy relies on special education classes, attending alternative school, living with family members, and the lack of a driver's license or a job as evidence of impairment before age 22.  But the record contains no school records showing Ms. Worthy attended special education classes or alternative school.  An intake mental health note indicates she was expelled

---

[27]*Id*. at p. 281 (she complained about losing her Medicaid coverage because she refused to put her children's father on child support; when the therapist suggested her children would benefit from child support, she said she was waiting on her disability claim and would apply for Medicaid based on disability).

[28]*Id*. at p. 204.

[29]*Id*. at p. 205.

[30]20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (2011).

from high school for absenteeism and bad behavior,[31] but the note suggests no deficits in adaptive functioning or intellectual deficits.  Ms. Worthy lived with others because she lacked the financial resources to live on her own.[32]  She did not drive because she did not own a vehicle.[33]  No evidence suggests she has sought a job.  She presented no school records or other childhood evidence that might further her claim.  In short, there is no evidence demonstrating or supporting onset of the impairment before age 22.

Ms. Worthy undoubtedly experienced depression and stress flowing from her circumstances, but she was not mentally retarded.  She had three small children and relied on public assistance,[34] but that is not a basis for disability benefits.  The ALJ limited Ms. Worthy to unskilled work.[35]  The ALJ asked a vocational expert about available work for a person with Ms. Worthy's ability to work.  The vocational expert

---

[31]SSA record at p. 279.

[32]*Id*. at p. 115 (she received $162/month in aid to families with dependent children and food stamps); p. 159 ("I have a small child to feed and no insurance or money to get the treatment I need."); p. 267 (she received housing assistance and food stamps; without that, she could not take care of her two children); docket entry # 1 (reporting $524/month in food stamps and $204/month in transitional employment assistance benefits).

[33]*Id*. at p. 148.

[34]Docket entry # 1.  When she applied to proceed in forma pauperis, Ms. Worthy reported three children, ages 5 years, 3 years, and 8 months.

[35]SSA record at p. 20 (limiting work to involving short, simple tasks and instructions; occasional contact with the public; and occasional interaction with co-workers, and supervisors).

identified representative light work.[36]  The vocational expert's answer shows that work existed that Ms. Worthy could do, regardless of whether such work exists where she lived, whether a job vacancy existed, or whether she would be hired if she applied for work.[37]  Because such work existede, Ms. Worthy was not disabled under social security disability law.

**Conclusion and recommendation**.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Ms. Worthy's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

DATED this 5th day of May, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

---

[36]*Id*. at pp. 41-42 (identifying box builder, locker room attendant, and laundry aide as representative light work).

[37]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).